## Kentucky Traction and Terminal Company v. Soper.

(Decided May 18, 1926.)

### Appeal from Bourbon Circuit Court.

1. Carriers—Street Car Company is Not Responsible to Passengers for Defects in Street, Except so far as Company is Required to Keep Portion of it in Repair.—Street car company is not responsible to passengers for injuries resulting from defects or obstructions in the street, except in so far as company is required to keep street between or adjacent to its rails in repair.

2. Carriers—If Street Car Company and Conductor Know of Dangerous Condition of Street, Failure of Conductor to Warn Alighting Passenger, Directly Resulting in Injury to Him, Makes Company Liable.—If street car company and conductor know of dangerous condition of street, failure of conductor to warn alighting passenger of danger or obstruction in the street, which directly results in injury to passenger, makes the company liable.

3. Carriers—Until Street Car Company Knows of Defect in Street, Neither Company nor Conductor Need Warn Passenger.—Until street car company knows of defect or obstruction in street, neither company nor conductor need warn the passenger or instruct him how to alight.

4. Carriers—Street Car Company Held Not Liable to Passenger who, in Alighting from Car which Stopped 60 Steps Past Intersection, Stepped on a Small Rolling Object on Concrete Pavement and Fell, as it was Not Bound to Warn of Such Objects, and Carrying Beyond Intersection was Not Proximate Cause.—Street car company held not liable to passenger for injuries received in alighting from car which had passed intersection 60 steps, when she stepped on a small rolling object on smooth concrete pavement and fell, as company was not bound to know, or hence warn, of such ob-

jects, and as negligence in carrying passenger beyond intersection. was not proximate cause of injury.

WALLACE MUIR, N. N. MEEKS, ALLEN, BOTTS & DUNCAN and DENIS DUNDON for appellant.

TALBOTT & WHITLEY for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

As appellee, Ruth Soper, alighted from an interurban car of appellant company in Paris, at night time, she stepped upon something that rolled and moved causing her foot to creel and she fell upon the pavement, injuring her foot and ankle and dislocating some of her internal organs in such way as to cause her excruciating pain and disable her for many weeks to pursue her regular employment as stenographer and bookkeeper. She was awarded $5,000.00 damages by a jury, upon which verdict judgment was entered, and the traction company appeals.

Appellant company insists that its motion for a directed verdict made at the conclusion of appellee's evidence should have been sustained and that the trial court erred to its great prejudice in overruling the motion for the reasons (a) that there was no showing of negligence on the part of the company; (b) that appellee knew of the condition of the street at the point where the accident occurred, and voluntarily assumed the risk of injury by reason of the condition of the street; and (c) the testimony conclusively shows that the street at the point where the accident occurred was not inherently dangerous, or at all dangerous. A brief statement of the evidence will lead to a better understanding of the questions presented. Appellee, Miss Soper, and her sister, Mrs. Harrison, who resided in Paris, had spent the day shopping at Lexington, returning on a late car to Paris. Her home was on Fifteenth street, which was crossed by Main street, upon which the interurban ran. As the car approached Fifteenth street and soon after it passed Sixteenth street, Mrs. Harrison, who sat with Miss Soper, rang for Fifteenth street. About that time a man passenger got up and went forward as if to alight from the car. There was no halt of the car as it approached Fifteenth street, and appellee and her sister, observing this, rang again just as the car was entering the intersection

of Fifteenth street. Hearing this the motorman-conductor turned and asked the man passenger if that was his ring, and received information that the ladies desired to get off at Fifteenth street; he thereupon applied the brakes and brought the car to a stop some sixty steps or more beyond the intersection of Fifteenth street. When the car was at a standstill the man passenger immediately alighted and went his way; then came appellee, who put her foot down to the step and then stepped to the pavement. She says it was dark and she held on to the car with her right hand; that as she put her foot down on the pavement it rested upon something that moved or rolled causing her foot to twist and her to fall on the pavement, causing her injuries. When she fell the conductor and other persons came to her assistance and she was carried home. The car was left standing until the conductor returned; it was then discovered that the step of the car was about 59 feet from the nearest street light; that the lights were on in the car, as was also the headlight. In addition to the foregoing there was a bright electric light on the door of the car immediately over the step which came on with the opening of the door and shut off when the door was closed; that this light reflected upon the step and pavement immediately below the door. It was further shown that the street at the point of the accident was newly paved with cement and was reasonably smooth and had no defect as a pavement; but appellee proved it had on or over it a slight bit of dirt, sand, gravel, or other substance or object which rolled or moved. Appellee testified, as did her sister, that the conductor did not warn them of the dangerous condition of the street, which had been torn up along near that place for repairs, and that she did not know of the dangerous condition of the street at that point or know that the street was being repaired along at that point. In testifying about how the accident happened Miss Soper said:

"He stopped the car, opened the door and Mr. Sprake got out first. I followed; looked out and saw that it was dark; then when I put my first foot down on the steps I saw that I could not see. I put my left foot down and fell. Whatever I stepped on rolled or gave way and twisted my ankle. This turning of my ankle put me in a twist and I fell to the street. . . . ''

"Q. Tell the jury whether or not you had ever gotten on and off an interurban car at that place at night? A. Never had. . . .

"Q. As you stepped off the car, could you see where you stepped? A. I could not.

"Q. Did you know the conditions there at that particular point? A. I did not.

"Q. After stepping off and after your ankle turned, did you discover what you stepped on? A. Well, I knew that I had stepped on something unstable.

"Q. Describe the condition as you discovered it after you stepped off? A. I stepped on something that was unstable. I knew it wasn't concrete, for the concrete is stable.

"Q. You mean it wasn't hard like concrete? A. No, sir; it moved.

"Q. And did you at that time step on the concrete? A. No; if I did there was something over the concrete. . . .

"Q. Had you ever noticed the condition of Main street at that particular point, or did you know the condition at that particular point? A. I did not.

"Q. Or had you ever paid any attention to it before? A. No special attention. . . .

"Q. Did he say anything to you or point out the danger? (Objection by defendant; sustained; exceptions.)

"Q. Did he say anything at all to you, Miss Soper, at that time? A. He did not.

"Q. Or at any time? A. Never. . . .

"Immediately after I put my foot down, I began to suffer great pain in my foot and I was in great anguish all over. They picked me up and I screamed all the way home. I continued in great pain. The doctor was called. I suffered great pain all over my body and went into a chill. The doctor came and bandaged my ankle and knee and put on a lotion. Then I was in such pain that they gave me a narcotic, but I continued to suffer. I finally dropped off to sleep, but could not sleep except spasmodically; that was for several nights; could only sleep under the influence of narcotics, and suffered great pain with my ankle and body."

On cross-examination appellee was asked what kind of shoes she wore on the evening of the accident, and if she still had them, and she answered, in substance, that she wore suede black satin pumps and that she still had them. She was then asked if she would bring them down to court on the next day and she answered that she would. Further questions elicited the fact that they were high-heel slippers with one strap; the heels were even higher than those on the ones she wore at the trial. The slippers were later presented in court and are before us now. They are dainty little black satin one-strap slippers, built on very high French heels.

While the motorman-conductor denied that any signal was given for a stop at Fifteenth street until that street had been reached, appellee and her sister testified that they rang the bell in plenty of time for the car to have stopped at the intersection of Fifteenth street, but that the car did not stop until it had passed the intersection fifty or sixty steps. Accepting appellee's evidence as true, the motorman was negligent in failing to stop at Fifteenth street. But was that negligence the proximate cause of appellee's injury? The generally accepted rule is that a street car company operating along public streets, taking on and discharging passengers, is not responsible for defects or obstructions in the street or for injuries resulting to passengers from such defects or obstructions except in so far as the company is required to keep the street between or adjacent to its rails in repair. If, however, the dangerous condition of the street at the place where passengers are discharged or about to be discharged is known to the company and its conductor in charge of its car, it is the duty of the conductor to warn the alighting passenger of such danger or obstruction in the street before he alights, and if the conductor fails to do so and as a direct result of such failure the passenger is injured by the defects or obstructions in the street, the railroad company is liable.

"In general there is no duty to instruct or warn passengers of the proper or safe mode of entering or leaving cars, it being the duty of the passenger to comply with the usual reasonable and known regulations of the carrier with reference to safe entrance and exit. Thus a street car company need not warn an alighting passenger of the danger of colliding with or being run over by other vehicles in the street,

or of the ordinary condition of the street. However, it is the carrier's duty to warn a boarding or an alighting passenger of dangers of which it knows or ought to know, and of which the passenger is ignorant, especially at a place other than a regular stopping place. Thus, where a street car company stops its car at a place where there are obstructions or defects in the street of which it knows or should know, but of which an alighting passenger is ignorant, it is its duty to warn him thereof." 10 C. J. 925.

The rule governing street car companies is different from that applicable to old line railroads which maintain depots and platforms on which passengers alight from trains and from which passengers board trains, and there is a good reason for the rule. Street cars generally maintain no platforms or depots and passengers board the cars from the street and alight on the street. Over these streets the company has no control save that between its tracks. The municipality has full control over the streets and is responsible for their maintenance and proper condition. If the street becomes defective and out of repair or obstructions are allowed to be and remain upon the street it is not the fault of the street car company but of the municipality, and until the street car company knows of a defect or obstruction in the street at a point where a passenger is about to alight, no duty rests upon it or its conductor to instruct the passenger how to alight or to warn him of danger. Our rule in Kentucky accords with the general rule. In the case of Sweet v. Louisville Railway Company, 23 Ky. Law Rep. 2280 (1902), 67 S. W. 4, where the facts were much like those of the present case, it was said:

"If the street at the place of discharging the passenger presents a dangerous condition to one alighting there, and such danger is obvious to the passenger, the carrier is not liable to him for injuries received from such defects. But where the danger is known, or is such as must have been known to the carrier, and is unknown to the passenger—as where, because of the darkness, he cannot see it—the carrier is bound to warn the passenger of the danger, or to assist him in safely alighting or stop the car at a point beyond or short of the dangerous point. Its failure to take one of these precautions renders it

liable to the passenger sustaining injury because of such neglect. Railway Co. v. Scott, 86 Va. 902, 11 S. E. 404; Stewart v. Railway Co. (Minn.), 80 N. W. 854; Sowash v. Traction Co., 188 Pa. 618, 41 Atl. 743. While the street railway company is not bound to furnish safe places for depositing its passengers, it is bound to either select them or to warn the passenger of the conditions. Whether the hole in this instance was the cause of appellant's injury, or was such a defective place for discharging passengers as to render it obviously unsafe, are questions of fact that should have been submitted to the jury."

To the same effect is Mernaham v. Cincinnati Street Railway Company, 86 S. W. 688, 27 Ky. Law Rep. 737. The latest utterance of this court upon the subject is found in the opinion of Mayhew v. Ohio Valley Electric Railway Company, 200 Ky. 105. There we reviewed all of the authorities and held that where the danger is known, or is such as must have been known to the carrier, and is unknown to the passenger, for any reason, the carrier is bound to warn the passenger of the danger, but if the dangerous condition of the street is unknown to the railway company and its conductor, no liability attaches.

According to the evidence the street at the point where the accident happened was paved with concrete, contained no defect and was not obstructed unless the small pebble or other diminutive object which moved when appellee stepped on it, was an obstruction. The step from the car to the street was of the average height, and no complaint is made of it. There was nothing wrong with the street surface unless it should have been swept to remove the slight bit of dust, gravel, sand or other moving or rolling object upon which appellee later stepped. She says she stepped upon something which lay upon the paved surface—not described but presumably very small—and this rolled or moved and caused her to fall. There is no contention that the street car company, the city officials or any one knew that the pebble or rolling substance was upon the surface of the pavement at that point. Nor was it the duty of the street car company to anticipate that gravel or small objects of that kind are calculated to cause injury to an alighting passenger. Negligence of the motorman in carrying appellee beyond Fifteenth street was not the proximate cause of her fall and consequent injury, but it was the immediate result of

her stepping upon the small ambulatory object which lay upon the surface of the street. The street itself was not defective, and there was seemingly plenty of light. The danger from the pebbles on the street was not known to the conductor nor was the company or its conductor bound to know of such objects upon the street, and it was not, therefore, the duty of the conductor in stopping the car to allow appellee to alight to warn her of any antici- pated danger or to assist her in alighting from the car. If, however, the conductor had known of any defect in the street at the point where the car stopped, had there been a defect, it would have been his duty to warn the alighting passenger of such defect and had he failed to do so and an injury had resulted to the passenger in alighting as the direct result of such defect in the street, the street car company would have been required to re- spond in damages. That, however, is not the case we have here. The injury of appellee was not the result of a defect in the street nor of negligence of the traction com- pany, but resulted from her placing her dainty, high- heel shoe upon some small pebble or moving object on the surface of the street in such way as to cause her foot to move, and, thus precipitated her fall, all the merest accident, nothing more. The trial court did not take this view of the case and submitted it, over the objection of the appellant company, to the jury; this was error neces- sitating a reversal of the judgment. If upon another trial the evidence is in substance the same as upon the last trial, the court will direct the jury to find and return a verdict for the interurban company.

Judgment reversed.