KNAPP *v.* CITY OF DETROIT.

1. CARRIERS—STREET RAILWAYS—SAFE PLACE FOR PASSENGERS TO ALIGHT.
    It is the duty of a street-railroad carrier to exercise proper care to see that the place of alighting is safe and not to stop its car for alighting passengers at a place where it is known to be unsafe.

2. SAME—ALIGHTING OF PASSENGERS NEAR DANGEROUS PLACE—WARNING.
    A street-railroad carrier may not negligently invite the passenger to alight at a point where a few steps will plunge him into disaster without warning him of the danger.

3. SAME—PASSENGERS ALIGHTING NEAR DANGEROUS PLACE—DUTY OF CARE.
    It is as much the duty of the carrier of passengers to see that the place where it stops to permit passengers to alight is such that they may alight safely as it is to carry passengers safely while they are on the cars; or, in case it becomes necessary to invite passengers to alight at a point where there is danger of injury, to give such warning or such assistance, or both, if necessary, as to prevent injury.

4. SAME—PASSENGER'S RIGHT OF ASSUMPTION OF SAFE PLACE TO ALIGHT.
    When a car stops for a passenger to alight it is the duty of the company's servants to know that the place is a reasonably safe one, and a passenger has a right to assume that such is its condition unless it is obviously dangerous.

5. SAME—STOPPING PLACE IN A STREET.
    Where a street railroad's stopping place is in the street, which is under the control of the city and not the street railway company, and where there exists no duty of the latter to keep the street in repair, the company is not liable for its being out of repair and thereby dangerous, unless it knew of the dangerous condition or could have known it by the exercise of ordinary care, and failed to inform the passenger of the facts or to assist him in alighting.

Liability of a public utility for dangerous conditions to the public it serves on land in its possession, see 2 Restatement, Torts, § 347.

6. SAME—KNOWLEDGE OF DANGEROUS PLACE IN STREET—WARNING
   TO ALIGHTING PASSENGERS—QUESTION FOR JURY.

   Whether or not municipal street railway operator of railway
   in another city knew or should have known of hole 4″ wide,
   5″ deep, and 15″ long in pavement of safety zone where car
   was stopped for passengers to alight and whether it should,
   therefore, have warned plaintiff who alighted in the safety
   zone as well as whether plaintiff was guilty of contributory
   negligence in failing to see such hole *held*, questions of fact
   for the jury, where there is testimony that hole had been
   in the pavement for 2 or 3 weeks prior to the date of the
   accident and that zone was crowded when plaintiff disem-
   barked.

7. MUNICIPAL CORPORATIONS—HOME RULE CITIES—CHARTERS—STAT-
   UTES.

   Provisions of the charters of home rule cities shall not conflict
   with or contravene the provisions of any general law of the
   State (1 Comp. Laws 1929, § 2272).

8. SAME—CLAIMS FOR INJURIES BECAUSE OF DEFECTIVE STREETS—
   CHARTERS—STATUTES—VERIFICATION OF CLAIM.

   Unsworn written notice of claim for injuries, sustained by
   plaintiff because of defective street, given to city within 60
   days from injury, was sufficient notice, notwithstanding charter
   requirement that claim be verified, especially in view of re-
   quirement of the general highway law in respect to such
   claims that "no other or further notice shall be required"
   than written notice upon the municipality within 60 days (1
   Comp. Laws 1929, § 4230; Hamtramck City Charter, chap.
   7, § 9).

9. SAME—CHARTERS—STATUTES—CLAIMS FOR INJURIES BECAUSE OF
   DEFECTIVE STREETS NEED NOT BE UNDER OATH.

   Charter provision of home rule city requiring that notice of
   claim for injury sustained by reason of defective street be
   written and under oath is invalid insofar as provision that it
   be under oath is concerned in view of statutory provision re-
   quiring merely a written notice and that "no other or further
   notice shall be required," *Merrifield* v. *Village of Paw Paw*,
   274 Mich. 550, being expressly overruled insofar as incon-
   sistent herewith (1 Comp. Laws 1929, §§ 2272, 4230; Ham-
   tramck City Charter, chap. 7, § 9).

   BUSHNELL, C. J., and BOYLES and BUTZEL, JJ., dissenting in
part.

Appeal from Wayne; Taylor (Mark D.), J., presiding. Submitted June 6, 1940. (Docket No. 41, Calendar No. 41,154.) Decided November 13, 1940. Rehearing denied February 7, 1941.

Case by Anna L. Knapp against City of Detroit, Department of Street Railways, a municipal corporation, and City of Hamtramck, a municipal corporation, for damages for personal injuries sustained by falling in a safety zone. Directed verdict and judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Adrian D. Rosen (Albert Summer,* of counsel), for plaintiff.

*A. Albert Bonczak,* for defendant City of Detroit.

NORTH, J. This is an appeal in a personal injury case from a judgment entered on a directed verdict in favor of the defendants. On November 13, 1936, in the afternoon, plaintiff was a passenger on one of the streetcars operated by the defendant city of Detroit. The car was northbound on Joseph Campau avenue in the city of Hamtramck. Plaintiff alighted at a regular car stop, designated as a "safety zone," which is merely a marked-off portion of the street next to the car tracks, in front of one of the entrances to the Dodge automobile plant. She had taken only two or three steps in a northeasterly direction when she stepped into a hole in the pavement within the safety zone and fell, severely injuring herself. At the time both the streetcar and the safety zone were crowded by workmen going to the Dodge plant. Plaintiff testified that because of the crowded condition of the safety zone she did not see the hole until after she had fallen.

After plaintiff had called all her witnesses, except two doctors who were to testify as to the extent of

her injuries, the trial judge directed a verdict in favor of the city of Detroit, on the theory that under the facts in the case the city of Detroit could not have been guilty of negligence. And after one of its witnesses had been called the trial judge directed a verdict in favor of the city of Hamtramck on the ground that plaintiff had failed to file a sworn claim with the city council within the period of 60 days required by the charter of the city of Hamtramck.

The first question presented for decision is as to whether as a matter of law the city of Detroit was free of negligence. It is agreed by the parties and it is the general rule that "it is the duty of a street railroad carrier to at least exercise proper care to see that the place of alighting is safe—not to stop a car for alighting passengers at place known to be unsafe." *Spangler* v. *Saginaw Valley Traction Co.*, 152 Mich. 405, 410, and authorities cited, p. 411. It is the contention of the defendant city of Detroit that when the plaintiff reached the surface of the street safely, the relationship of passenger and carrier ceased and that thereafter any mishap could not be attributable to its negligence. The courts of some States have reached decisions agreeing with this contention. *Lenoue* v. *Railway Co.*, 257 Mass. 285 (153 N. E. 533); *Gerlach* v. *City of Philadelphia*, 103 Pa. Sup. 401 (157 Atl. 212). We cannot agree with this contention. Instead we are constrained to follow the rule of the *Spangler Case, supra,* and the rule of the majority of States, that the carrier may not negligently invite the passenger to alight at a point where a few steps will plunge him into disaster without warning him of the danger.

In 1 Nellis on Street Railways (2d Ed.), p. 616, § 308, it is said that:

"A street railway company is required to exercise the highest degree of care for selecting a place for

the stopping of its cars to allow passengers to alight. The duty imposed upon a street railway company is to select a reasonably safe place for landing its passenger, and to make such selection with reference to getting off the car while the same is at rest. It is as much the duty of the company to see that the place where it stops to permit passengers to alight is such that they may alight safely as it is to carry passengers safely while they are on the cars; or, in case it becomes necessary to invite passengers to alight at a point where there is danger of injury, to give such warning or such assistance, or both, if necessary, as to prevent injury. When a car stops for a passenger to alight it is the duty of the company's servants to know that the place is a reasonably safe one, and a passenger has a right to assume that such is its condition unless it is obviously dangerous. * * * In case of a passenger injured in alighting from a streetcar owing to the condition of the street, it is said that liability exists where the dangerous condition of the street is known or could have been known to the street railway company, but is unknown to the alighting passenger, unless he is warned or assisted to a safe place."

This rule was expressly approved and applied in *Mayhew* v. *Railway Co.*, 200 Ky. 105, 108 (254 S. W. 202), wherein it is said:

"If, however, a street railway has provided a regular depot at a stopping place, the same duties are imposed upon it with reference to its safety for the discharge of passengers as are imposed upon other carriers of passengers. Where there is no such depot provided and the stopping place is in the street, which is under the control of the city and not the street railway company, and where there exists no duty of the latter to keep the street in repair, the company is not liable for its being out of repair and thereby dangerous, unless it knew of the dangerous condition or could have known it by the exercise of

ordinary care, and failed to inform the passenger of the facts or to assist him in alighting."

To the same effect is *Kentucky Traction & Terminal Co.* v. *Soper,* 215 Ky. 536 (286 S. W. 776):

"If * * * the conductor had known of any defect in the street at the point where the car stopped, had there been a defect, it would have been his duty to warn the alighting passenger of such defect and had he failed to do so and an injury had resulted to the passenger in alighting as the direct result of such defect in the street, the streetcar company would have been required to respond in damages."

In *Durieu* v. *New Orleans Public Service, Inc.,* 7 La. App. 276, the court held that where the surface of a street was cracked and uneven, it was a question of fact as to whether the place where the streetcar stopped was unsafe.

The test applied in *Wagner* v. *New Orleans Public Service, Inc.,* 9 La. App. 699 (120 South. 72), as to the safety of the place where the streetcar stopped is:

"A railroad or streetcar company is responsible to a passenger for its failure to furnish a safe place to disembark or for stopping its car and allowing or inviting a passenger to disembark at an unsafe place."

The rules above stated were applied in *Caley* v. *Kansas City, Missouri & K. C. P. S. Co.,* 226 Mo. App. 934 (48 S. W. [2d] 25); *Poehl* v. *Cincinnati Traction Co.,* 20 Ohio App. 148 (151 N. E. 806); and in *Kennedy* v. *Fleming,* 114 Kan. 853 (221 Pac. 249); and the cited cases are in accord with our decision in *Quinn* v. *New York Life Ins. Co.,* 224 Mich. 641.

Nor is it a sufficient performance of the streetcar company's duty if the passenger reaches the surface of the street in safety, if a step or two will cause

the passenger to encounter unsafe conditions. *Spangler* v. *Saginaw Valley Traction Co., supra.*

There was testimony that the streetcar stopped so that the door from which plaintiff alighted was three or four feet south of the hole in the pavement, which was about 4 inches wide, 5 inches deep and 15 inches long. The same witness testified that he had noticed the hole in the pavement a week before the accident. Another witness testified that the hole was 7 or 8 inches deep and that she had seen the hole 2 or 3 weeks prior to the date of the accident. Plaintiff testified that many people got off the car at the same time that she did and that the safety zone was crowded. Other testimony substantiated this claim. Under this state of facts whether the defendant city of Detroit knew or should have known of the unsafe conditions in the safety zone and whether it should therefore have warned the passenger is a question of fact for the jury.

Defendant city of Detroit further contends that plaintiff was guilty of contributory negligence as a matter of law in not seeing the hole in the pavement. Under the facts in this case, especially the crowded condition of the safety zone, this issue presents a question of fact for the jury. We think it cannot be held as a matter of law that the instant case is one within the holdings that if the defect is as obvious to the injured person as to the carrier there can be no recovery. 1 Nellis on Street Railways, p. 619, § 308; *Whitmore* v. *Railway,* 185 Mich. 46. Under the facts, it is questionable whether the danger was obvious to the plaintiff and we cannot say that she was guilty of contributory negligence as a matter of law. The trial judge erred in directing a verdict in favor of the city of Detroit.

The remaining question is: Was the trial judge correct in directing a verdict in favor of the defend-

ant city of Hamtramck on the ground that plaintiff failed to give proper notice? As noted, the accident happened November 13, 1936. On November 20, 1936, an attorney wrote a letter for plaintiff to the city notifying it of the accident. The city attorney replied, calling attention to the provisions of the city charter which required "claim in writing and under oath" within 60 days after injury. On December 23, 1936, the same attorney for plaintiff wrote a more detailed letter to the city, but this notice was not under oath. On February 17, 1937, plaintiff, through the attorney who now represents her, filed a sworn claim with the city. But this latter claim was made after the expiration of the 60-day limit. Chapter 7, § 9, of the Hamtramck city charter provides as a prerequisite to bringing suit against the city for injuries sustained by reason of defective streets, sidewalks, et cetera, that the injured party shall serve or cause to be served "within 60 days after such injury * * * his claim in writing and *under oath.*" But the applicable statute (1 Comp. Laws 1929, § 4230 [Stat. Ann. § 9.598]) provides:

"Sec. 8. In the event damages are sustained by any person, either by bodily injuries or to his property, because of the defective condition of any highway, street, bridge, sidewalk, crosswalk, or culvert in any city or incorporated village of this State where written notice of such inquiry [injury] and defect is now required by law to be served upon such village or city before recovery can be had, it will be necessary to show that such person did serve written notice upon said village or city within sixty days from the time of the happening of such injury. Said notice may be served upon any member of the common council, city or village clerk, board of public works, street commissioner, marshal or other city or village officer, except policeman or fireman. The notice will specify the location and nature of said

defect, the injury sustained, and the names of the witnesses known at the time by claimant. If required by the common council or committee thereof, said claimant shall produce his witnesses before said common council or committee, and they may be sworn and examined as to the nature of the claim, the amount thereof, and the extent of the injury. The common council or committee shall have power to subpoena witnesses for such hearing. *No other or further notice shall be required.* The intent and purpose of the provisions of this chapter are to make the law of liability on the part of townships, villages and cities for injuries sustained by persons because of the defective condition of the highways and the procedure in giving notice thereof, uniform throughout the State, and to repeal all laws or acts of the legislature be the same general, local, or special which are inconsistent with or contravening the provisions herein. All actions in court under this act must be brought within two years from the time said injury was sustained."

The city of Hamtramck adopted its present charter in 1922. It is a home rule city and the statute applicable to home rule cities provides:

"SEC. 36. No provision of any city charter shall conflict with or contravene the provisions of any general law of the State." 1 Comp. Laws 1929, § 2272 (Stat. Ann. § 5.2116).

The cited statute required an unsworn notice only. The city of Hamtramck had no power to adopt or enforce provisions in its charter contravening the requirement of the statute, 1 Comp. Laws 1929, § 4230. *Northrup* v. *City of Jackson,* 273 Mich. 20. The statute expressly provides "No other or further notice shall be required." The statute controls, and in so far as the city's charter requires notice other than that specified by the statute, it is invalid. The notice of December 23, 1936, was sufficient under the

statute and the trial judge erred in directing a verdict for defendant city of Hamtramck.

The trial judge in ordering verdict in favor of Hamtramck, not without some justification, relied upon *Merrifield* v. *Village of Paw Paw*, 274 Mich. 550. Decision in that case turned upon the construction to be given to 1 Comp. Laws 1929, § 1534 (Stat. Ann. § 5.1270), and, so considered, the correct result was reached. But by seeming inadvertence when that case was under consideration our attention was not directed to 1 Comp. Laws 1929, § 4230, or to the fact that the later statute to some extent modified the earlier statute, especially in a particular applicable to the instant case—*i. e.*, a claim for "personal injury." To the extent that decision in the *Merrifield Case* is inconsistent herewith it is overruled.

The order of the trial judge directing a verdict for defendants is reversed and the case remanded for further proceedings therein. Costs to appellant.

SHARPE, CHANDLER, MCALLISTER, and WIEST, JJ., concurred with NORTH, J.

BUTZEL, J. (*dissenting in part*). I concur in the foregoing opinion reversing the judgment as to the city of Hamtramck. The trial court incorrectly relied on *Merrifield* v. *Village of Paw Paw*, 274 Mich. 550, which was decided upon a provision of the village law requiring submission of a verified claim before allowance. In the case before us, a city rather than a village is involved. But we need not at this time determine whether the enactment of 1 Comp. Laws 1929, § 4230 (Stat. Ann. § 9.598), has obviated the requirement of making a verified claim against a village, in addition to giving the required notice (see *Barkley* v. *Village of Highland Park*, 199 Mich. 549), when damages from defective condition of a

highway is the subject of the claim. This problem is not before us.

However, I think the trial court was right in directing a verdict in favor of the city of Detroit. I agree that the carrier must exert proper efforts to stop at places where the passengers may get on and off with safety. *Spangler* v. *Saginaw Valley Traction Co.,* 152 Mich. 405. In that case, but a few hours before the night of the accident, defendant, through its own contractor, had removed the paving blocks near the tracks and left an open excavation into which plaintiff fell. The traction company was responsible for, and chargeable with knowledge of, the condition of the street. But I do not think the *Spangler Case* warrants submission to the jury of the question of the carrier's negligence in the case before us now. We have said that even where the condition of the stopping place is under the control of the carrier, it is nevertheless not an insurer of the safety of passengers on the premises, and that the law is not as exacting in the care required in this respect as it is in the conveying of passengers. *Oppenheim* v. *Pitcairn,* 293 Mich. 475. See, also, *Shepard* v. *Denver Tramway Corp.* (C. C. A.), 62 Fed. (2d) 339. I think fairness and practicality require a further limitation when the stopping place is under the control of a municipality which alone has the duty of maintenance of the surface of the street. In my opinion we ask too much if we require the motorman to be ever watchful of surface defects in a street over which the carrier has no control. We impose a duty that is practicably unworkable if the motorman must be constantly on the lookout for and give warning of minor defects in the street which might perchance catch a lady's heel or misguide a step. An operator who would actually try to abide by such an all-seeing duty could not within human limits give

enough of his attention to the far more important traffic hazards which are his primary duty, and yet at the same time render efficient, rapid, public transportation. It seems to me that the responsibility for any injuries due to ordinary minor street defects should be on the municipality, rather than on the carrier. I think that if the stop is on a paved public street generally supposed to be reasonably safe, the practical duty of the carrier has been discharged. *Perret* v. *George*, 286 Pa. 221 (133 Atl. 228); *Reid* v. *Railway Co.*, 171 Minn. 31 (213 N. W. 43); *Shepard* v. *Denver Tramway Corp., supra; Lee* v. *Railway Co.*, 182 Mass. 454 (65 N. E. 822); *Lenoue* v. *Railway Co.*, 257 Mass. 285 (153 N. E. 533).

In *Perret* v. *George, supra,* Mr. Justice Kephart wrote:

"The hole into which appellant stepped was in the public highway, a thoroughfare over which defendant had no control, was not in any way responsible for, and had no authority to repair, if needed. However broadly and strictly we may have held street railways to care in receiving and discharging passengers, where the company owns or controls the right-of-way with the approaches thereto, the rule is different where such right-of-way and approaches are not so owned. In the latter case, there is a permissive use of the street in common with others, without any control of it. The public officers were in authority, and the municipality is responsible for the street's condition if an injury results therefrom. * * *

"Streetcar companies are not required to observe the condition of streets over which its cars travel so as to stop their cars with exactness at places where passengers may avoid ordinary defects in the highway while alighting. To require otherwise would be to exact of such carriers a degree of care not consistent with efficient public service and would impose

an obligation impossible of performance, considering the condition of some of the highways of today. Streetcar companies, of course, cannot stop their cars for persons to alight at places manifestly dangerous.''

In *Reid* v. *Railway Co., supra,* it is said:

''The general rule of high degree of care is applicable at all times until the relation (of carrier and passenger) is terminated. It has its limitations. This rule is directed at the company's maintenance and operation, but we believe should not apply to the selection of a place to alight in the streets over which it has no control. It is the duty of the municipality to keep the streets in repair. It, if anyone, should be responsible for injuries resulting from street defects. It of course may not be the only one responsible for accidents connected therewith. The defective condition of the surface of the paved street which brought about plaintiff's injuries was not under the control of defendant. It cannot efficiently operate its system and exercise the highest degree of care in minutely watching for trivial surface defects such as are incident to traffic and the elements. It would be impracticable to require defendant to exercise the high degree of care in protecting a passenger against everything on the street upon which he might step and wrench an ankle. * * * He (the motorman) has important and exacting duties to guard against well-recognized street risks incident to vehicles and pedestrians upon the street which, with the constant necessity of having control of the car, command his attention. It is not reasonable to impose the duty of a high degree of care as to the condition of the street which is presumably suitable for the intended use. Such dangers are not usually incident to the operation of a street railway business. They are not naturally to be apprehended. Nor is the passenger helpless in his own behalf. To exact such degree of care would be unworkable.

The law does not impose rules incompatible with the ordinary operation of the business to which they relate."

I do not approve a rule which terminates the carrier-passenger relation at the instant the passenger's feet touch the street without mishap (*Creamer* v. *Railway Co.*, 156 Mass. 320 [31 N. E. 391, 16 L. R. A. 490, 32 Am. St. Rep. 456], and other cases cited in the *Spangler Case*), if, as Justice NORTH writes, "a few steps will plunge him into disaster." But I think "disaster" should have a narrower meaning as to the carrier when the danger is a surface defect within the safety zone which the municipality and not the carrier is obligated to repair.

The judgment should be affirmed, with costs as to the city of Detroit.

BUSHNELL, C. J., and BOYLES, J., concurred with BUTZEL, J.