# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RICHMOND CITY RAILWAY CO. V. SCOTT.

### MAY 8, 1890.

1. PASSENGER CARRIERS--*Duty—Liability.*—Such carriers bind themselves to carry safely those whom they take into their coaches, to the utmost care and diligence of very cautious persons; and this contract includes the duty of giving passengers reasonable opportunity to alight in safety from the train, and a violation of such duty is culpable negligence, for which an action will lie.
2. IDEM—*Declaration—Demurrer.*—In action on the case for negligent injury, it is sufficient if the declaration sets out between plaintiff and defendant the relation of passenger and carrier, the circumstances out of which the particular duty owing to plaintiff arose, and the breach of that duty.
3. INSTRUCTIONS—*Irrelevant.*—Where instructions asked for are not relevant to the evidence or the opposite party could not be prejudiced by them, *held*, not error to refuse them.

Error to judgment of circuit court of city of Richmond rendered March 9, 1889, in an action of trespass on the case, wherein Robert G. Scott was plaintiff, and the plaintiff in error, the Richmond City railway company, was defendant. Opinion states the case.

*Wyndham R. Meredith,* for the plaintiff in error.

*W. W. & B. T. Crump,* for the defendant in error.

HINTON, J., delivered the opinion of the court.

This is an action on the case to recover damages for injuries sustained by a passenger from falling into an excavation while in the act of debarking from a street car.

The defendant company owned and operated a street or horse railway in several of the streets of the city of Richmond. One of its main lines ran on Main street, which is one of the principal thoroughfares in the city; and, in order to connect this line with Hollywood cemetery, which is situated south of Main street, a branch line was run from that street to Hollywood, along Laurel street, the street leading from Main street to the latter place.

At the intersection of these two lines, at the corner of Main and Laurel streets, the company transferred its passengers reaching that point on its Laurel street branch, without additional fare, to its Main street cars running up Main street, or to its cars, which, running down Main street, turned off at this corner into Laurel street, north of Main, and ran to and down Broad street.

At the southwest corner of these streets, Main and Laurel, there was an employee of the company stationed, to see that the passengers desiring to continue their journey on the Broad or Main street lines were properly transferred.

At this point the track of the Laurel street line ran out into Main street. Here the cars coming from Hollywood were stopped, the horse was attached to the other end, and the cars were then started back on their return trips.

On the evening of the injury—namely, on the 20th September, 1888—a ditch or trench existed in Main street, running along the western side of the Laurel street track, a few inches from the rail, about twelve or fourteen feet in length, fifteen feet deep, and about three feet in width.

This ditch or excavation had been made by the city authorities for the purpose of laying a sewer. Its existence, however, was known both to the transfer-man of the company and to the driver of the Laurel street car, who stopped every twenty

or thirty minutes, near enough to it to see it and notice its location.

Just after dark, the plaintiff, Mr. Scott, a gentleman sixty-eight years of age, who was on his way to the corner of Fourth and Broad streets, took passage on the Laurel street car, coming towards Main street, about three squares south of Main street. He paid his fare and informed the driver that he was going to transfer to a Broad street car.

There was only one other passenger on the car. When the car reached its regular stopping place, the corner of Main and Laurel streets, the driver stopped it alongside the excavation, with the step of the car projecting slightly over the edge of the excavation. The transfer-man came into the car just at this juncture, and was told by the driver that there were two transfers. The other passenger now arose, and, being nearer * the door, went out first, and alighted on the east side of the car. The transfer-man next went out on the platform, and, by swinging himself around the back of the platform to the solid ground in rear of the car, as it was afterwards ascertained, succeeded in alighting on the west side of the car. And then the plaintiff, following the direction taken by the transfer agent, but being ignorant of the excavation, and of the means adopted by the agent to avoid it, went out on the west side of the platform of the car, and, in endeavoring to step from and off the car, was precipitated to the bottom of the excavation, and was thereby seriously, and, perhaps, permanently injured.

The jury, evidently regarding the foregoing as the facts established by the evidence in the case, returned a verdict for $3,500 in favor of the plaintiff, upon which judgment was entered by the circuit court.

The company now insists that the circuit court erred in the following particulars, viz:

1st. In overruling its demurrer to the declaration of the plaintiff.

2d. In giving certain instructions and in refusing certain others; and,

3d. In refusing to set aside the verdict and grant it a new trial.

In the court below the defendant assigned no reason for the demurrer. But in this court it is argued, and with apparent earnestness, that the declaration is insufficient in not showing, by proper averments, that the condition of the place where the car stopped "*was such, by reason of the absence of proper safeguards or warnings, as to have made such stopping negligence*," &c. In other words, the defendant, overlooking the marked distinction between the two classes of cases, seeks to apply to a case growing out of the relation of carrier and passenger a rule in regard to declarations in cases against municipal corporations, where the *gravamen* of the action is the maintenance of a "public nuisance."

But, as I have intimated, this rule can have no application to the present case. Here the action against the defendant is not founded upon negligence in allowing the excavation to remain without proper safeguards or lights, but it arises out of the duty which every carrier of passengers is under not to expose his passengers to any danger in alighting which can be avoided by the exercise of extreme care and caution. In this case the declaration, after setting out that the plaintiff, at the special instance and request of the defendant, became a passenger on one of the defendant's street cars, proceeds: " And thereupon it became and was the duty of the said defendant to use due and proper care that the said plaintiff should be carried in said railway, and safely landed and allowed safely to alight at the intersection of Laurel and Main streets"; "yet the said defendant, not regarding its duty in that behalf, did not use due and proper care for the safe carriage and landing and alighting of the said plaintiff, but wholly neglected so to do, and, with gross negligence and utter recklessness of its duty to said plaintiff, knowingly and negligently—to-wit, on the day and year aforesaid—stopped the said coach or car wherein the said plaintiff was a passenger, on arriving at the said regular and usual stop-

ping place, at or near the said intersection of Laurel and Main streets, alongside of a trench or excavation in said Laurel street about, to-wit, twelve feet in length and fifteen feet deep, the said defendant well knowing the trench or excavation to be at that point, so that the step of the said car was directly over the said trench or excavation; and the said plaintiff, being ignorant of the existence of said trench or excavation, in endeavoring to step from and off the said car, exercising due care and caution, stepped and fell, without fault on his part, directly in said trench or excavation, and was precipitated to the bottom thereof," &c. This was all that was necessary in the declaration. It sets out the relation of passenger and carrier between the plaintiff and the defendant, the circumstances out of which the particular duty owing to the plaintiff arose, and the breach of that duty. The demurrer was, therefore, properly overruled.

As to the second assignment of error—namely, that the court erred in the matter of instructions—we think but little need be said. Eight instructions were asked for by the defendant, and of these one (the seventh) was given, while the rest were refused, for the reason, doubtless, that the lower court thought, as we think, that none of them were relevant to any evidence in the case, and were, therefore, calculated to confuse and mislead the jury.

As to the three instructions given by the court, there is nothing in either of them that could by possibility prejudice the case of the defendant; for the two last submit the question of contributory negligence—of which I have been unable to find the slightest evidence in the record—to the jury; whilst the first instruction directs the jury to find for the defendant, unless they believe from the evidence that the injury to the plaintiff was occasioned solely by the negligence of the defendant.

We come now to the last question in the case, which is, whether the court erred in refusing to award a new trial. And

upon this point there will be found no room for doubt if we recur to a few familiar principles of law relating to the liability of carriers of passengers. "Passenger carriers bind themselves," says a learned author, "to carry safely those whom they take into their coaches, as far as human care and foresight will go—that is, to the utmost care and diligence of very cautious persons." Thompson's Carriers of Passengers, p. 443, sec. 3; *Farish* v. *Reigle*, 11 Gratt., 697; *N. Y., P. & N. R. R. Co.* v. *Cooper's Adm'r*, 85 Va., 939. And in *N. & W. R. R. Co.* v. *Prinnell*, 84 Va., this court said: "The implied contract to carry safely includes the duty of giving the passengers reasonable opportunity to alight in safety from the train, and a violation of this part of the company's duty is culpable negligence, for which an action will lie." In Wharton on Neg., sec. 649, it is laid down that "when a danger approaches it is the duty of the officers of the road to notify passengers, so that they can take steps to avoid it; and failure to give such notice is negligence. So, also, if there is a dangerous place at the landing, it is the duty of the conductor to warn those about stepping out." "And," he adds, * * * "he must give notice to all if any danger in alighting is probable."

In *Cartwright* v. *Chicago, &c., Railway Co.*, 52 Mich., 606, Cooley, C. J., says: "If a car in which there were passengers, was not standing where it would be safe for them to alight without assistance, it was the duty of the company to provide assistance, or give warning, or move the car to a more suitable place." See, also, *R. R. Co.* v. *Whitfield*, 44 Miss., 466; *R. R. Co.* v. *Buck*, 96 Ind., 346; *McGee* v. *R. R. Co.*, 92 Mo., 208; *Maverick* v. *Eighth Ave. Railway Co.*, 36 N. Y., 378.

These authorities show the extent to which the liability of carriers of passengers goes in cases like the present, and by this liability street or horse railways, as well as other classes of carriers, are bound. *Citizens, &c., R. R.* v. *Twinane*, 111 Ind., 589; *Smith* v. *St. Paul*, 32 Minn., 1; *Topeka City Railway Co.* v. *Higgs*, 38 Kans., 375; *City, &c., Railway Co.* v. *Findley*, 76

Opinion.

Ga., 311; *Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y., 628; *Hill* v. *Ninth Ave. R. R.*, 109 N. Y., 239.

Now, applying these principles to what we regard as the uncontroverted evidence in the case, which has been set out in this opinion, we can perceive no ground upon which to question the correctness of the verdict or judgment. It was plainly within the power, as it was within the duty, of the defendant to have pursued one of three courses, either of which would have prevented the accident. It might have stopped at some safe spot short of or beyond the excavation, or have directed Mr. Scott to alight on the eastern side of the car, or, if it chose to permit him to debark from the western side of the platform of its car, it should have warned him of the excavation and have assisted him over it. It chose to do neither and must pay the penalty.

The judgment of the circuit court is right, and must be affirmed.

JUDGMENT AFFIRMED.