## Mayhew v. Ohio Valley Electric Railway Company.

(Decided May 25, 1923.)

### Appeal from Boyd Circuit Court.

1. Carriers—Street Railroad Company Providing Depot Owes Same Duty to Alighting Passenger as Railroad.—Though the law recognizes a distinction between the duties of a street railroad company, operating its lines upon the streets of a city, toward an alighting passenger, as to the condition of the place, and the duties of a steam or interurban railroad in the country, which have regular and supposedly equipped places for stopping and have the right of way under their control, which they can and must prepare for that purpose, a street railway which has provided a regular depot at a stopping place is charged with the same duties with reference to its safety for the discharge of passengers as are imposed upon other carriers of passengers.

2. Carriers—Street Railroad Company Not Liable to Passsenger for Condition of Street Unless it Knew of Danger.—Where the stopping place to discharge passengers from a street car is in the street, which was under the control of the city and not of the street railroad company, and there exists no duty of the company to keep the street in repair, the company is not liable for its being out of repair and dangerous, unless it knew of the dangerous condition, or could have known it by the exercise of ordinary care, and failed to inform the passenger of the facts or to assist him in alighting.

3. Carriers—Street Railroad Company Must Warn Alighting Passenger of Danger Known to it, Unless it was Obvious.—Where a

street car company knows of a dangerous condition in the street at the point where it stops to discharge its passengers, and the danger is unknown to the passenger, as where because of darkness he cannot see it, the carrier is bound to warn the passenger of the danger, or to assist him in safely alighting, or to stop the car at a point short of or beyond the danger.

4.    Carriers—Negligence and Contributory Negligence Held Jury Questions in Action for Injuries to Passenger Alighting from Street Car.—In an action for injuries to a passenger who stepped from a street car onto a stake and thereby severely sprained his ankle, evidence that the stake was one of a row which had been placed there by the city engineer and had been there for some time, that the passenger knew generally of the presence of the row of stakes, but not of the location of the particular stake, and that the car stopped at night with the step directly over the stake, held sufficient to take to the jury the issue of the street car company's negligence and of the passenger's contributory negligence, so that it was error to direct a verdict for defendant.

B. S. WILSON for appellant.

MARTIN & SMITH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellee and defendant below, Ohio Valley Electric Railway Company, owns and operates a street railway system in the city of Ashland, Kentucky. Appellant and plaintiff below, J. R. Mayhew, was a passenger on one of its cars on November 23, 1920, and his destination was a place on the line of defendant located on Winchester avenue at a stopping point known as Rice Station. There was no depot or platform at that point, but it was the usual stopping place for the reception and discharge of passengers. The railway track was located off the improved portion of the traveled street, and between the track and the curbing of the street next to it there was a space of some three or four feet in width and at that point it was covered with cinders. That territory was annexed to the city four or five years prior to the happening of the accident for which plaintiff sues, and before then the traveled road which is now a street in the city was improved by Boyd county, and while that improvement was going on the contractors, as it seems to be conceded in the record, drove some stakes at the margins of the improved road along its line, one row of which was in the space above mentioned between the defendant's track and the curbing. They projected above the level of the

ground some four or five inches, but the record fails to disclose the distance they were apart, though we infer from the argument that there was some considerable space between them. It was between 6 and 7 o'clock p. m. when the car upon which plaintiff was riding stopped at the place for him to alight. The motorman opened the door, which dropped an automatic step upon which plaintiff placed his left foot and from there attempted to step upon the ground with his right foot, and it landed on one of the stakes and caused his body to careen and him to fall upon the ground, resulting in a severely sprained ankle. He filed this action in the Boyd circuit court to recover damages for his injuries, which he alleged in his petition were the proximate result of the negligence of defendant in failing to provide a reasonably safe place for him to alight from its car, and in failing to have the place lighted to enable him to discover the dangerous condition of the place, or the existence of any obstructions that rendered it so. The answer was a denial, with a plea of contributory negligence, which was denied by reply, and after the close of plaintiff's evidence the court sustained defendant's motion for a directed verdict in its favor and dismissed the petition. Plaintiff's motion for a new trial was overruled and he has appealed.

The testimony shows conclusively and without contradiction that the stake upon which plaintiff stepped and others in line with it were located about 18 inches from the curbing of the street and a sufficient distance from the car line to be at the line where a passenger would alight from the automatic step, and that they had become weather-stained so as to approximate the color of the cindered surface and to make difficult their discovery in the night time. It is likewise admitted by plaintiff that he knew in a general way of the existence of the row of stakes along that side of the street but he had no definite or specific knowledge of the exact location of any single one of them, and he had no actual knowledge of the presence of the one at the place where he attempted to alight from the car. Neither the record nor the briefs in the case inform us of the ground upon which the court directed the verdict in favor of defendant, but we infer (and indeed that is the only conceivable one) that it was because plaintiff had a general knowledge of the prior existence of the stakes along that side of the street.

The law recognizes a distinction between the duties of a street railway company, operating its lines upon the streets of a city, toward an alighting passenger, as to the condition of the place, and the duties of a steam or interurban railway in the country where the latter have regular and supposedly equipped places for the purpose and have under their control a right of way which they can and must prepare for that purpose. If, however, a street railway has provided a regular depot at a stopping place, the same duties are imposed upon it with reference to its safety for the discharge of passengers as are imposed upon other carriers of passengers. Where there is no such depot provided and the stopping place is in the street, which is under the control of the city and not the street railway company, and where there exists no duty of the latter to keep the street in repair, the company is not liable for its being out of repair and thereby dangerous, unless it knew of the dangerous condition or could have known it by the exercise of ordinary care, and failed to inform the passenger of the facts or to assist him in alighting.

The rule is so stated in Nellis on Street Railways, second edition, vol. 1, section 308, wherein it is said: "In case of a passenger injured in alighting from a street car owing to the condition of the street, it is said that liability exists where the dangerous condition of the street is known or could have been known to the street railway company, but is unknown to the alighting passenger, unless he is warned or assisted to a safe place."

The case cited in the note as supporting the text is Murnahan v. Cincinnati, Newport and Covington St. Ry. Co., 27 K. L. R. 737. In that case the passenger was carried about ten feet beyond the usual stopping point, as was done in this case, although counsel for appellee here concede and argue the case from the standpoint that it stopped at the usual place. The only danger or obstruction which produced the injuries to plaintiff in that case was the slightly uneven condition of the granite stones with which the street was paved. The accident occurred in the daytime and there was no averment of the existence of any unusual hole or depression in the street, or that the railway company or its employes knew of the slightly uneven condition of the pavement at the point where plaintiff therein alighted, nor was there any averment that plaintiff herself did not know of the obvious

condition of the street. The court sustained a demurrer to the petition but recognized the rule above stated and inferentially held that if the averments had been sufficient to bring the case within it a different disposition of the case would have been made.

The duty of street railway companies under such circumstances was laid down by this court in the case of Sweet v. Louisville Ry. Co., 113 Ky. 15, 23 Ky. L. R. 2280, wherein the opinion says: "It is stated, and it seems to be true, that a different duty attaches to street railway and to steam railway operators in respect to furnishing safe places for discharging their passengers. The latter must furnish such, while the former is under no such obligation, but discharges its passenger at convenient points along the streets it traverses. Booth St. Railway Law, section 326. If the street at the place of discharging the passengers presents a dangerous condition to one alighting there, and such danger is obvious to the passenger, the carrier is not liable to him for injuries received from such defects. But where the danger is known, or is such as must have been known to the carrier, and is unknown to the passenger, as where, because of the darkness, he cannot see it, the carrier is bound to warn the passenger of the danger, or to assist him in safely alighting, or stop the car at a point beyond or short of the dangerous point. Its failure to take one of these precautions renders it liable to the passenger sustaining injury because of such neglect. Railway Co. v. Scott, 86 Va. 902, 11 S. E. 404; Stewart v. Railway Co. (Minn.), 80 N. W. 854; Sowash v. Traction Co., 188 Pa. 618, 41 Atl. 743. While the street railway company is not bound to furnish safe places for depositing its passengers, is is bound to either select them or to warn the passenger of the conditions." That case was referred to with approval in the Murnahan case and in the case of City of Louisville v. Arrowsmith, 145 Ky. 498; and it is in line with the holdings of other courts as well as the statements of text writers. 10 Corpus Juris 914, 925 and 939, and Elliott on Railroads, vol. 3, second edition, sections 1096 ct. 1096 cy.

In this case plaintiff, as we have said, had seen at some time prior to the accident the row of stakes along defendant's railway track, though he had no definite knowledge at the time that any of them were driven at the usual stopping place or near thereto. It was dark and the obstruction producing his injuries was not obvious, and

defendant, if it did not have actual knowledge of the condition, it would seem it had ample opportunity to discover it by the exercise of ordinary care, since, as we have seen, the stakes had been placed in the same condition for as much as three years at least. At any rate, the evidence upon the issue of defendant's negligence and that of plaintiff's contributory negligence was such as to undoubtedly require their submission to the jury under proper instructions, and it was error for the court to decline to do so by giving the peremptory instruction.

Wherefore, the judgment is reversed with directions to grant the new trial and for proceedings consistent with this opinion.