## Louisville & Nashville Railroad Company v. Scarbrough.

(Decided March 20, 1925.)

### Appeal from Lee Circuit Court.

1. Appeal and Error—Finding, Based on Conflicting Evidence, Not Disturbed.—Finding for plaintiff based on conflicting evidence will not be disturbed, although numerical weight of witnesses be with defendant; it being question for jury to say which story to believe.

2. New Trial—Allowed where Affidavit as to Absent Witness' Testimony was Knowingly False.—In action against carrier for personal injuries caused while alighting from train, where plaintiff admitted defendant's affidavit as to what testimony of absent

witness would be, discovery after verdict for defendant that witness would not have testified as claimed, and that he had told claim agent of defendant carrier so, held ground for new trial, as being fraud and misconduct within Civil Code of Practice, sections 340, 518.

3.  New Trial—Second Motion for New Trial Allowed More than Three Days After Verdict.—Although more than three days had elapsed after verdict for defendant carrier, and first motion for new trial had been denied, second motion held properly allowed, where plaintiff presented new grounds as soon as discovered; authority being properly inferred from Civil Code of Practice, sections 342, 344, 518.

4.  Appeal and Error—Error in Admission of Evidence Not Considered in Absence of Objection Below.—In absence of objection below, error in admission of evidence, claimed not proper under pleading, will not be considered.

5.  Trial—Instruction, Following Allegations of Petition, Not Open to Objection.—In action for personal injuries, instruction as to elements of damages following allegations of petition held not open to objection merely because proof, unobjected to, may have disclosed injuries not alleged.

6.  Carriers—Carrier had Duty to Assist Passenger to Alight.—Where train on a dark night passed beyond platform where passengers usually alight, where there was a steep embankment which could not well be seen, carrier had duty to assist passenger to alight.

7.  Carriers—Carrier has Duty of Only Ordinary Care to Keep Depots and Premises Reasonably Safe.—Carrier of passengers is chargeable only with ordinary care to keep its premises and depots in reasonably safe condition and reasonably well lighted for use of people coming there to board trains or leave trains after arrival.

8.  Carriers—Carrier has Duty of Highest Degree of Care for Passengers.—Carrier owes its passengers highest degree of care while in transit, which status continues until safely alighted, or at least given opportunity to safely alight from train.

9.  Trial—Refusal to Give Requested Instruction, where Substance was covered by those Given, Not Error.—Refusal to give requested instruction outlining theory of defense held not error, where substance thereof was covered by instructions given.

10. Damages—$1,000.00 Not Excessive for Injuries to Woman from Falling Down Railroad Embankment.—In action for injuries caused woman by falling down railroad embankment on alighting from train at night, $1,000.00 held not excessive, where it was shown she suffered a miscarriage as result of accident.

ROSE & STAMPER, HUNT, NORTHCUTT & BUSH and WOODWARD, WARFIELD & DAWSON for appellant.

J. MOTT McDANIEL for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Late in the evening of July 22, 1922, appellee became a passenger at Typo, Kentucky, on one of appellant's trains. She was bound for Lock 13, a flag station at which no depot was maintained but only a platform of cinders and screenings. She arrived at her destination shortly after midnight. In this suit she claims that the train on which she was a passenger ran some 200 or 300 yards beyond the station platform; that as she started through the car to alight from the front platform she was directed by the conductor to turn back and get off from the back platform; that although she called his attention to the fact that there was no light for her to see by or any stool to assist her in alighting he paid no attention to her, and that as she stepped from the train she fell down a steep incline beside which the train had stopped, so injuring herself that she thereafter suffered a miscarriage. The conductor denied the statements of the appellee and testified that the train stopped at the regular platform, that appellee, assisted by the flagman, alighted in safety and never fell as she stated. He was corroborated by the witness, Gross, and circumstantially by other testimony. Although the numerical weight of the witnesses was with the appellant, yet it was for the jury to say which story it believed, and we cannot disturb on this score its finding for appellee.

There were two trials in this case. On the first trial appellant announced "not ready" when the case was called, due to the absence of a material witness, Luke Spicer, its flagman on the train from which appellee claimed she fell. Being required to file an affidavit as to what Spicer would testify, appellant, through its chief agent in Lee county, swore that Spicer if present would say:

"He was flagman upon the train upon which plaintiff claims she was riding and which she was leaving at the time she claims to have been injured; that he was at the steps with a lighted lantern and assisted all passengers to alight from said train who did alight from said train at said place; that plaintiff did not fall from said train, nor did she fall at any time while attempting to alight therefrom, nor at any time before said train left said station; that said train stopped at the regular station platform

and all passengers from said train alighted at said platform and that said train did not stop beyond said platform."

Appellee admitted the affidavit, and the case proceeded to trial, resulting in a verdict for the present appellant. Appellee in due course filed her motion and grounds for a new trial, which were overruled. Thereafter, during the same term at which this case was tried, but more than three days after the verdict of the jury had been rendered, appellee filed a motion to set aside the order overruling her motion for a new trial and to be permitted to file additional grounds for such new trial. These additional grounds were that Spicer, if present in court, would not have testified as appellant swore he would. In addition to the appropriate affidavit showing due diligence in the discovery of this matter and in the presentation of it to the court, appellee also filed this affidavit of Spicer:

"Affiant, Luke Spicer, says that he does not know a thing about Florence Scarbrough getting off the night train going toward Ravenna about one p. m. on the night of July 22, 1922, or any other time, and did not see her get off or get hurt and told the claim agent, Earl Rice, this, and affiant says that he was not hiding last week but duly got released from service from the L. & N. official at Ravenna and got a pass for Lexington, for a few days, and told them where he was going, and affiant says that he never told anyone whomsoever that he was standing near or saw Mrs. Scarbrough get off the train, nor led them to so believe, but told all he knew nothing about the case."

The trial court set down for hearing appellee's motion and had Spicer before him for oral examination. This examination appears in the record and, in substance, discloses that Spicer did not know a thing about the accident; if it happened he did not see it; if appellee was a passenger he did not remember—all of which he told one Earl Rice, appellant's claim agent who investigated this accident for appellant. Earl Rice was not produced to deny this statement. After hearing Spicer orally the court sustained appellee's motion, set aside the order overruling appellee's prior motion for a new trial, and on the additional grounds filed granted appellee the new trial asked for.

On the second trial, the evidence being similar to that of the first, with the exception of that of Spicer who, produced by appellant, again testified as above noted, the jury found a verdict for appellee in the sum of $1,000.00, from which appellant appeals.

Appellant has brought up the record of the first trial, and at the outset insists that the action of the lower court in awarding appellee a new trial should be set aside and the first verdict reinstated. In this we cannot concur. In Gibson v. Sutton, 24 Ky. L. R. 868, 70 S. W. 188, this court held that a new trial cannot be granted on the grounds that an absent witness, had be been present at the trial, would not have testified as the affidavit, admitted for the purpose of securing the trial, stated he would. This rule was followed in Louisville Railway Co. v. De Gore, 27 Ky. L. R. 54, 84 S. W. 326, with this modification: If the person tendering the affidavit knows the witness would not testify as stated, the verdict will be set aside because of such fraud. The case before us comes squarely within this modification. Although appellant's counsel and its agent who swore to the affidavit used on the first trial were ignorant of Spicer's qualifying statements to appellant's claim agent, and hence are not to blame in the slightest for the situation resulting, yet appellant itself must be charged with the information given to its claim agent sent out to investigate this accident. It appears without any contradiction from him that Spicer told him, in substance, that he knew nothing about this accident and yet appellant files an affidavit which carries to any fair-minded man the idea that Spicer was present and knew and remembered all that transpired on the occasion complained of. Appellant ought not and cannot retain the fruit of a victory secured in this fashion. Fraud and misconduct on the part of the prevailing party have always been grounds under the Code for the granting of a new trial. Civil Code, sections 340, 518.

Appellant insists, however, that as the court had overruled appellee's motion for a new trial and more than three days had elapsed since the rendition of the verdict prior to the filing of these additional grounds, the court was without power to set aside the verdict and grant a new trial, and this despite the fact that the term at which the case had been tried had not expired. But such is not the case. Courts have inherent power to control their judgments during the term at which they are rendered. South Mountain Coal Co. v. Rowland,

204 Ky. 820, 265 S. W. 320. Aside from this, Civil Code, section 342, itself warrants an application for a new trial made after the expiration of three days from the rendition of the verdict if application prior thereto has been unavoidably prevented. This practice is further plainly authorized by fair inference from Civil Code, sections 344 and 518. See also Callahan Construction Co. v. Williams, 160 Ky. 814, 170 S. W. 203. In this case appellee presented her new grounds to the court as soon as she discovered them, and we think that not only under the plain provisions of the cited sections of the Code but also under its inherent power to control its judgments during the term at which rendered the court plainly had the right, and it was its duty under the circumstances here present, to sustain the application of appellee.

Concerning the second trial, appellant insists that as the petition of the appellee did not allege she had suffered a miscarriage as a result of her accident it was error to admit any evidence concerning it. It is sufficient to say that appellant never objected to this evidence either on the first or second trial and cannot now be heard to complain of it. In this connection appellant also claims that it was error to instruct the jury regarding this claim of miscarriage. Bearing on what the appellee might recover for if she was entitled to any recovery, the court said:

"If you find for the plaintiff, you will award such a sum in damages as will fairly compensate her for her mental and physical suffering, if any, and for the reduction, if any, of her power to earn money, which you may believe from the evidence was the proximate result of her injury."

This instruction follows the allegations of the petition and appellant cannot complain if the proof unobjected to by it disclosed a miscarriage as a part of her physical suffering, if any.

Appellant next criticises the instructions of the court and complains of the rejection of an offered instruction. So far as pertinent the instruction criticised reads:

"1. The court instructs the jury that it was the duty of the defendant's agents in charge of the train mentioned in the evidence to exercise the highest degree of care which prudent persons en-

gaged in like business usually exercise to carry plaintiff safely as a passenger on said train from Typo to Lock Thirteen and there allow her safely to alight from said train and to furnish her a reasonably safe place, manner and means with which to alight, and if the jury believe from the evidence that when said train reached Lock Thirteen, those in charge of same, pulled said train beyond the platform where passengers usually alight from trains, and that at the place where plaintiff alighted from said train, there was an embankment which she did not see, and by the exercise of ordinary care could not have seen, and that plaintiff in alighting from the steps of said train, by reason of negligence on the part of agents of defendant in charge of said train in negligently stopping said train beyond said platform and in failing to help her to alight, fell on or over said embankment and was injured as set out in the proof, you will find for the plaintiff, and unless you so believe you will find for the defendant.''

Appellant insists that the court should not have embodied in this instruction any reference to its failure to assist appellee in alighting. Conceding that appellee did not specifically request any such assistance, which under the evidence in this case is a debatable question, yet under the circumstances of this case we think the court correctly placed upon appellant the duty of assisting appellee to alight if the jury believed her version of the accident. If she was in the right the appellant was knowingly discharging her at a place 200 yards or better beyond the platform in the middle of a dark night over a steep embankment which she did not see and could not have seen by the exercise of ordinary care. Under these contingencies the duty of assisting appellee was undoubtedly upon appellant. Sweet v. Louisville Railway Co., 113 Ky. 15, 67 S. W. 4; C., N. O. & T. P. v. Bell, 25 Ky. L. R. 10, 74 S. W. 700, and see the note in 48 L. R. A. (N. S.) 816, where the authorities on this point are collected.

Appellant next insists that the court erred in telling the jury that the degree of care which it was bound to exercise on the occasion in question was the ''highest degree of care,'' and cites Payne, Agent v. Simmons, 201 Ky. 33, 255 S. W. 863, in support of this contention. This case follows the general rule that a carrier of passengers is chargeable only with the exercise of ordinary

care to keep its premises and depots in reasonably safe condition and reasonably well lighted for the use of people coming there to board trains or leaving trains after arrival. But the question here is: What degree of care does the carrier owe to its passenger while in transit? It is, of course, the highest degree of care. And the passenger is still in transit with this corresponding obligation on the part of the carrier until he has safely alighted or at least been given opportunity to safely alight from the train. Illinois Central R. R. Co. v. Dallas, 150 Ky. 442, 150 S. W. 536. See also 10 C. J. 924. Appellant's criticism in this regard is without merit.

Appellant complains that the court did not give instruction B offered by it which reads:

> "If you believe from the evidence that the train in question stopped at the station platform at Lock 13 and that the plaintiff alighted from the train at said station platform you will find for the defendant."

The court in instruction No. 1 given, the pertinent part of which is quoted above, plainly told the jury that appellee could recover only if negligently carried by her station and negligently caused to fall down an embankment which she did not see and could not see in the exercise of ordinary care on her part. It is obvious that this instruction covered adequately appellant's theory of defense as outlined in the offered instruction.

Lastly, appellant claims that the damages awarded are excessive. In the light of the evidence in this case concerning appellee's pain and suffering, there is no merit in this contention.

Judgment affirmed.