# Ken-Ten Coach Co. v. Davis.

Jan. 30, 1942.

R. W. Keenon and H. C. Gillis for appellant.

R. C. Browning and J. B. Johnson for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At the dates here involved the appellant and defendant below, Ken-Ten Coach Company, was a corporation operating as a common carrier of passengers by motor vehicle on the state highway between Williamsburg, Kentucky, and Corbin, Kentucky. On the 10th day of January, 1940, the appellee and plaintiff below, Maggie Davis,

purchased a ticket for transportation of herself from Williamsburg, Kentucky, to Brummett, which appears to be a suburban settlement of the city of Corbin. The motor vehicle was not the ordinary and usual one employed generally by motor vehicle carriers, but it was one known as a "shot gun" type vehicle, which in turn means that it was constructed after the fashion, type and style of an ordinary automobile, but with its body longer and containing more seats than the ordinary one, with doors on both sides opening on the outside at the end of each seat for the admission and exist of passengers at their destination, but plaintiff's exit was not at that point.

Plaintiff on entering the vehicle of defendant, which was traveling north, seated herself on the middle seat of the vehicle and next to the outside, with two or three other passengers on the same seat to the left of her. The passenger sitting next to her was destined for Rockhold, Kentucky, through which the defendant's vehicle passed on its route to Corbin and to plaintiff's destination. When the vehicle stopped at Rockhold to let off passengers and take on others at that stopping place, plaintiff attempted to open the door on her immediate right at the end of the middle seat she was occupying and to get out of the vehicle to enable the passenger destined for that place sitting next to her to himself alight. She says that she herself opened the door and stepped out on the ground from the running board of the vehicle; but the overwhelming proof in the case shows that a young man by the name of Longsworth, who boarded the vehicle at that point, after he had entered it from the door opposite its last rear seat, himself opened the door, having seen plaintiff trying to do so, and that after the passenger destined for that place had left the car he (Longsworth) then closed the door. However, plaintiff states that she does not know who closed the door after she got back into the vehicle, but that in its closing it caught one of her feet at the bottom and injured it, perhaps crushing some of the bones on her instep or ankle, causing considerable pain and damage—to recover for which she filed this action in the Whitley circuit court against defendant on the 8th of the following February, and in her petition she alleged that she had been damaged in the general sum of $5,000, and sustained special damages of $100 for medical and hospital bills. Defendant's answer denied the material averments of the petition, with an

additional plea of contributory negligence, which was controverted, and upon trial the jury, under the instructions of the court, returned a verdict in favor of plaintiff for the sum of $250 upon which judgment was rendered. Defendant's motion for a new trial was overruled, and it has filed a transcript of the record in this court with a motion for an appeal, which is now sustained.

After the record was filed in this court counsel for plaintiff entered motion to strike appellant's "motion for an appeal," but no grounds are advanced for the sustaining of such a motion so made and designated. It is, however, argued that the stenographer's transcript of the evidence was not filed in accordance with the prescribed practice, but that what plaintiff's counsel is really trying to accomplish by the motion is to strike the bill of evidence. The motion was passed to the merits of the case and will now be disposed of. Waiving the impropriety of the character of motion to reach the matter complained of, and treating it as if properly made for that purpose, we have examined the record and find that the bill of evidence was filed during the next term of the court within the time allowed for that purpose, and that it was then filed by the clerk's endorsement thereon, as well as on the record, "in open court." The filing of it, therefore, met the requirement of the practice, and the motion of plaintiff herein is overruled.

One hundred and fourteen typewritten pages of testimony are contained in the bill of evidence filed by the stenographer, but the great bulk of it is devoted to the extent of plaintiff's injuries and to the collateral issue of whether or not the conditions of which she complains were the result of any injuries sustained at the time and in the manner complained of, or whether by a prior injury to her foot of several years' duration so as to cause it to swell and enlarge after a certain amount of use; but none of which issues will be discussed in this opinion, since in the motion for a new trial no error is alleged except the claimed one that defendant's motion for a directed verdict in its favor made at the close of plaintiff's testimony and at the close of all of the testimony should have been sustained, and that the court erred in overruling it. That ground is the sole one discussed in appellant's brief and is, of course, the sole one submitted to us on this appeal.

In her original petition plaintiff, in alleging the neg-

ligence of defendant, stated that "when the said bus stopped at Rockhold, Kentucky, she was asked by the driver in charge of the said bus to get off of said bus to let other passengers get into the hallway of the said bus, and after all the passengers and parties had gotten on said bus, that she did get back on the steps at the open door of the bus and started to go inside, and that the door of said bus was open and that Arnold Evans, driver of said bus, the agent, and servant of the defendant, suddenly, without notice to her negligently and carelessly closed the door as she stepped in, and broke her right foot and dislocated her right ankle." However, after the evidence was heard and after it was overwhelmingly proven (and even admitted by plaintiff in her testimony) that the charges in her petition were untrue, she filed an amended petition withdrawing all allegations of her original pleading inconsistent with the amendment, and in which she averred: "That it was necessary for this plaintiff to get out of her seat so that other passengers could get out of the bus and that it was the duty of the defendant to see that its passengers on the bus were safely discharged and to use the highest degree of care when it discharged its passengers from the bus and that the defendant, its agents and servants by their failure and neglect to use the highest degree of care for its passengers on said bus thereby permitted the said door of the bus to be closed with great force and violence before this plaintiff had securely gotten into her seat and at a time when her foot was near the door and by the negligence of the defendant its servants and agents the door was slammed with great force and violence and produced injuries to the foot, leg, and ankle of this plaintiff," etc.

It is thus seen that in the petition she claimed that what she did, and what happened to her while doing it, was at the instigation of and through the activity of defendant's driver of the vehicle; whilst in her amended petition she made no claim that the driver of the bus had directed her to leave it, or that he closed the door after she had reentered the bus, or that he had done anything in connection with the opening of the door, or the exit of plaintiff, or the closing of the door after her re-entry into the bus. There was no testimony in the case to prove that it was necessary for plaintiff to leave the bus in order for her companion passenger, who had arrived at the end of his journey at Rockhold, to make his exit therefrom, or that she had reached her destination, but

only that it was possibly more convenient to both plaintiff and the alighting passenger that she leave the bus temporarily (she sitting next to the door through which the exit of the passenger was made) and then to re-enter the bus after the passenger had alighted therefrom. However, if such process was the only method or means by which the passenger could make his exit, and that the course pursued was the only available one, then there does not appear any fact in the case imposing any duty on the part of defendant's agent in charge of the bus to himself open and close its door, or to in any wise participate or assist plaintiff in alighting from the bus, or in re-entering it, or in either opening the door or closing it.

In the case of Illinois Cent. R. R. Co. v. Cruse, 123 Ky. 463, 96 S. W. 821, 823, 8 L. R. A., N. S., 299, 13 Ann. Cas. 593, the question of the duty of common carriers to assist their passengers in boarding their vehicle or in alighting therefrom at their destination, was involved. The trial court gave an instruction to the jury that such duties were unqualifiedly imposed upon the carrier, and in reversing the judgment for that error, after referring to a great number of foreign cases, we said: "Obviously, it is not incumbent on the employés of a carrier of passengers, on their own initiative, to render any special service to one or more passengers to the exclusion of others; their whole duty being to secure the safety and comfort of all. It certainly is not their duty to be on the lookout to discover that any particular passenger needs special assistance. We think, however, if a passenger is in need of special assistance, either from sickness or other misfortune, and this fact is known to the employés of the carrier, it is their duty to render it; but they are not required to anticipate such wants or needs."

Likewise, in the case of Louisville & N. R. R. Co. v. Bowman, 208 Ky. 39, 270 S. W. 471, 472, the same question was presented, and in disposing of it we said: "Ordinarily the trainmen are not under a legal duty to assist passengers on or off the trains; nor is such duty imposed in a case of a sick or infirm person unless the infirmity is obvious or a request for assistance is made."

Contrary cases, some of which are relied on by plaintiff's counsel, are distinguished in that opinion by the fact that the necessity for rendering assistance was apparent to defendant's agents and servants in charge, or that a request for assistance—because of incumbrances

of the alighting passenger—was made and refused. Intervening domestic cases between the Cruse and Bowman ones are Beiser v. Cincinnati, N. O. & T. P. Ry. Co., 152 Ky. 522, 153 S. W. 742, 43 L. R. A., N. S., 1050; Bullitt v. Louisville & N. R. R. Co., 142 Ky. 670, 134 S. W. 1153, and Hawkins v. L. & N. R. R. Co., 180 Ky. 295, 202 S. W. 632, 3 A. L. R. 637. Text authorities are to the same effect, they all being in accord with the statement of the correct rule found in the text of 13 C. J. S., Carriers, p. 1362, Section 727, saying: "In the absence of circumstances showing that a passenger about to board, or alight from, the vehicle of a carrier requires assistance, there is as a general rule no duty personally to assist him, particularly in the absence of any request for assistance; nor is it necessarily incumbent on the carrier's employees to direct a passenger how he shall get on or off, or how he shall go after he has alighted."

The proof in this case, according to plaintiff's testimony, was that she, of her own accord, made her exit from the vehicle in which she was riding for the convenience of her alighting fellow passenger; that it was done at no direction, or even knowledge or consent of the driver of the vehicle who had charge of it, nor did he participate in any activity connected with either making the exit or her re-entry into the vehicle and, of course, he had nothing to do with the opening or closing of its door. She testified that she opened the door through which she left the transporting vehicle, but that she did not know who closed it. She said, however, that before receiving her injuries she had completely re-entered the vehicle and had turned her body around facing the door—all of which occurred before she took her seat. All the other witnesses who were present, some four or five, testified that when the door was shut by Longsworth (and as he also testified) plaintiff had already taken her seat next to the door, with her feet on the floor of the bus; but under the adjudicated law to which we have referred it is immaterial whether plaintiff was injured in the one way or the other, since the proof in the case develops no situation imposing any duty on the part of the carrier (defendant), or its agents or servants in charge, to render any assistance which plaintiff avers they neglected to perform for her benefit. Much emphasis is made by counsel for plaintiff in their brief upon the high degree of care imposed upon common carriers to protect the safety of their passengers, but the

declared law, supra, in no wise contravenes that rule, or limits its scope to any extent whatever. The mandatory rule referred to applies only to the duties incumbent upon the carrier and not to any duties or actions that are incumbent upon the passenger, and to the accomplishment of which the carrier is under no obligation to contribute, unless the conditions above referred to are present. They are not present in this case, and, therefore, no violated duty is proven against defendant, nor was any alleged in the amended petition. It follows that the court erred in not sustaining defendant's motion for a peremptory instruction to return a verdict in its favor. Upon another trial, if there should be one, and the evidence is substantially the same as in the instant one, the court, if such a motion is made, is directed to sustain it.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and for proceedings consistent with this opinion.