## Southeastern Greyhound Lines v. Woods.

Dec. 8, 1944.

H. C. Gillis and R. W. Keenon for appellant.

L. O. Siler for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The decision of the case depends upon what the duty a common carrier by motor bus is with respect to the place along the highway at which it discharges a passenger. The appeal is from a judgment for $2,000, recovered by the appellee, Mrs. Lizzie Woods. Her injuries consisted of a severe sprain and twist of her knee and body.

Mrs. Woods and her 19 year old son were passengers on a bus of the appellant, traveling south to Williamsburg, on March 17, 1943. They lived about 100 yards up a country road to the west of the highway, a mile or so north of Williamsburg. On signal of the son the bus stopped at the road entrance. It was customary for the busses to stop at this point upon request. Mrs. Woods was 60 years old and weighed 210 pounds. Her son preceded her down the steps, carrying the baggage. He assisted his mother to alight and no request for assistance was made of the operators of the bus. It was about 8 o'clock at night and dark. The lights of the bus were turned on and the defendant's witnesses say a spotlight illuminated the steps, but the plaintiff and her son say it did not. Mrs. Woods testified that she stepped down on to the concrete paving of the highway with one foot and with the other stepped into a hole alongside the paving. The son testified the hole was eight or ten inches deep and about a foot from the edge of the concrete. Stepping into the hole caused her to fall back against the bus momentarily, although she was holding on to her son for support.

The plaintiff's evidence was that the bus was stopped with the steps just off the flare or rounding mouth of the side road instead of near the center where the way was smooth and clear. The hole or gully had been made by wagons and cars turning into and coming out of the side road, and by the washing out of the gravel of which the shoulder of the highway and the road were made. The son knew the hole was there. The mother did not, but knew there were ruts in the road. The evidence for the defendant was that the steps of the bus were near or at the center of the side road and that there was no hole where the passengers got off.

The injured passenger had a ticket for Williamsburg and, of course, was entitled to transportation there. The stopping of the bus near her home was for her convenience and accommodation. She had gotten off there upon two previous occasions.

The case was submitted to the jury upon the predicate of the carrier owing its passenger the highest degree of care, not only to transport her to her destination but to afford or furnish a reasonably safe place to get off the bus. The instruction was patterned after that approved in Louisville & N. R. Co. v. Scarbrough, 208 Ky. 79, 270 S. W. 494. The defendant as appellant, insists that that is not a correct statement of the law with respect to the place of discharge under the circumstances of the case and that it was entitled to a directed verdict because the passenger had chosen the place to get off and the company had accommodated her.

First, we may say that there is no liability of the carrier for failing to assist the passenger to alight. The conditions were not such as to impute knowledge or an appreciation of the need for its employe to assist the passenger without request, and, as we have said no request was made. The adult son rendered that aid. Louisville & N. R. Co. v. Dyer, 152 Ky. 264, 153 S. W. 194, 48 L. R. A., N. S., 816; Louisville & N. R. Co. v. Bowman, 208 Ky. 39, 270 S. W. 471; Ken-Ten Coach Co. v. Davis, 289 Ky. 329, 158 S. W. 2d 624.

It is quite generally stated as fundamental law that it is the duty of a common carrier to exercise the highest degree of care towards its passengers. The statement may be too general and broad. It may be more definitely stated as the duty to exercise the high-

est degree of care, skill and diligence for the safety of the passengers as is required by the nature and risk of the undertaking, in view of the mode of conveyance and other circumstances involved, which may vary according to the immediate activity, instrumentality, time or place. 13 C. J. S., Carriers, secs. 678, 683; Annotations, 96 A. L. R. 727; Shelton Taxi Co. v. Bowling, 244 Ky. 817, 51 S. W. 2d 468; Chesapeake & O. R. Co. v. Hay, 248 Ky. 69, 58 S. W. 2d 228; Dix v. Gross, 271 Ky. 231, 111 S. W. 2d 673. This duty of observing the highest degree of care exists while the passenger is in transit and that continues until he has safely alighted from the vehicle, or at least has been given an opportunity to alight. But as respects the carrier's platforms, premises and stations the duty is only to exercise ordinary care to keep them in reasonably safe condition and reasonably lighted. Louisville & N. R. Co. v. Scarbrough, 208 Ky. 79, 270 S. W. 494; Trout's Adm'r v. Ohio Valley Electric R. Co., 241 Ky. 144, 43 S. W. 2d 507.

Although they deal with the subject of a safe place at which to discharge passengers, we put aside cases involving injuries to passengers by other traffic where they were discharged in the street, except as they may reflect the applicable principle of law. Of such are Trout's Adm'r v. Ohio Valley Electric R. Co., supra; Tinnell v. Louisville R. Co., 250 Ky. 245, 62 S. W. 2d 467; Taylor v. Patterson's Adm'r, 272 Ky. 415, 114 S. W. 2d 488. See also Lewis v. Pacific Greyhound Lines, 147 Or. 588, 34 P. 2d 616, 617, 96 A. L. R. 718, and annotations.

As is well said in 10 Am. Jur., Carriers, Sec. 1395: "A passenger bus company stands in a different position from that of a railroad or street car company. A railroad ordinarily has exclusive control over its stations and grounds where passengers are received and discharged and, in such case, the relationship of carrier and passenger continues, after the latter has alighted from the train, for a period of time reasonably necessary to enable him to leave the carrier's premises. The same situation does not ordinarily obtain in the case of passengers upon busses."

We quote also this pertinent statement of the law from Lewis v. Pacific Greyhound Lines, supra: "An automobile bus is able to move or stop in the street at the will of the driver. Ordinarily stations are not main-

tained by such carriers. The safety of the place afforded the passenger for alighting is entirely within the control of the driver, and passengers are discharged to suit their convenience. The degree of care to be exercised must be commensurate with the danger involved. To discharge a passenger on a highway where he would be subject to the dangers of vehicular traffic would clearly not meet the degree of care which the law exacts. As stated in Roden v. Connecticut Co., 113 Conn. 408, 155 A. 721, 722: 'The duty of a common carrier of passengers includes an obligation to furnish them a safe place in which to alight, as far as that place is provided by it or is affected or conditioned by the movement of the vehicle, and that duty is only satisfied if it exercises the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities employed and the dangers naturally to be apprehended.' "

In Hensley v. Braden, 262 Ky. 672, 91 S. W. 2d 34, we pointed out the difference in the construction or application of the general rule as to the duty of furnishing safe passage to and from a car in the case of operating a taxicab as compared with a railroad since the taxicab operator takes up and discharges passengers on the street. We held that such a carrier is not under a duty to advise or warn a passenger getting out of the danger of traffic, or to protect him from that traffic after he has left the car where the conditions are as apparent to the passenger as to the operator of the taxicab, and the duty of the passenger to exercise ordinary care for his own safety includes seeing and hearing that which an ordinary prudent person in like or similar circumstances should see and hear. But in Fowler v. Randle, 284 Ky. 164, 143 S. W. 2d 1049, 1051, we held a petition to be good where the facts alleged were that upon a signal of the plaintiff that he wished to use the cab it had stopped in the dark off a street where there was a considerable hole or step-off into which the passenger stepped and was injured. This was because: "In selecting a place on the street for his passenger to enter he must exercise care to select a point on the street reasonably safe for that purpose. We are, of course, not concerned with the question of contributory negligence. If the danger was as open and obvious to the appellant as to the taxi driver, then the appellant would be barred of

recovery by reason of contributory negligence but according to the allegations of the petition, she did not discover the danger and could not have discovered it by the exercise of ordinary care.''

We stated the very obvious law that a carrier may not lead a passenger into a trap by an implied invitation.

The law that a carrier must furnish a reasonably safe place for its passengers to alight has one meaning or application where it furnishes the station or platform or other facilities and another meaning or application where it does not do so. It seems to us that where a motor bus company lets a passenger off at his request and for his convenience at a place other than its station or platform, its duty is quite like that of a street railway company discharging passengers into the street, over which it has no control and for the condition of which it is in no way responsible. In such a case the carrier's duty is merely not to hazard the safety of the passenger by putting him off or allowing him to get off at a place which the carrier, through its employe, knows or ought to know is unsafe. Thus, in Sweet v. Louisville R. Co., 113 Ky. 15, 17, 67 S. W. 4, a street railway car was stopped at or near the usual street crossing. The street was made of macadam and had become so worn at this particular point that a depression was formed two or three feet long and six inches deep. It was so near the edge of the track that a passenger stepping from the car would be apt to step into it. The hole was to be seen easily in the light. The street was under the exclusive control of the city, which alone had the obligation of keeping it in repair. The duty of the carrier was stated to be: ''If the street at the place of discharging the passenger presents a dangerous condition to one alighting there, and such danger is obvious to the passenger, the carrier is not liable to him for injuries received from such defects. But where the danger is known, or is such as must have been known, to the carrier, and is unknown to the passenger,—as where, because of the darkness, he cannot see it,—the carrier is bound to warn the passenger of the danger, or to assist him in safely alighting, or stop the car at a point beyond or short of the dangerous point. Its failure to take one of these precautions renders it liable to the passenger sustaining injury because of such neglect (Richmond City) R. Co. v. Scott, 86 Va. 902, 11 S. E. 404; Stewart v. (St. Paul City) Ry. Co., (78) Minn. (110),

80 N. W. 855; Sowash .v. (Consolidated) Traction Co., 188 Pa. 618, 41 A. 743. While the street railway company is not bound to furnish safe places for depositing its passengers, it is bound to either select them or to warn the passenger of the conditions.''

It was held that the case should have been submitted to the jury upon the issues of whether the hole was the cause of the plaintiff's injury or was such a defective place for discharging passengers as to render it obviously unsafe. The decision seems to have been predicated upon the idea that the street railway company knew this large defect was in the street.

Of like character is Kentucky Traction & Terminal Co. v. Soper, 215 Ky. 536, 286 S. W. 776, where a passenger in getting off an interurban electric car, some distance from a street intersection, in the dark, stepped on an object in the street which rolled or moved and caused her to twist her ankle and fall. While it appeared that the kind of shoe the passenger wore had much to do with her accident, the duty of the carrier towards furnishing a safe place in which to alight as stated in the Sweet case was confirmed with some elaboration. See also Mayhew v. Ohio Valley Electric R. Co., 200 Ky. 105, 254 S. W. 202.

The duty of a carrier with respect to affording a safe place for passengers to alight is not to be diminished as a broad statement of the law, and it may be said to exist where the place is provided by it or is affected or conditioned by the movement of the vehicle. But that duty under other conditions is satisfied if the carrier exercises the highest degree of care and skill which may reasonably be expected of intelligent and prudent persons engaged in such a business in view of the instrumentalities employed and danger naturally to be apprehended. 4 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed. sec. 2172.

There are two outstanding facts in this case. One is that the Bus Company had no knowledge of the hole or rut alongside the paving, either actual or constructive. The carrier had the right to assume that the highway had been properly maintained by the State and, therefore, was not chargable with knowledge of the hole into which the plaintiff stepped. The other fact is that the passenger knew there were ruts in the road and did not look to see where she was stepping. The bus had stopped there

on her request and solely for her convenience. It was on the paved surface and it appears there was ample room on the pavement for the passenger to have stepped.

The facts in MacDonald v. Philadelphia Rural Transit Co., 147 Pa. Super. 220, 24 A. 2d 37, 39, are much like those in the instant case. The conclusion of the court was:

"We are unable to find any reason for the driver of defendant's bus to have anticipated that the stop at the place requested by wife plaintiff to alight to reach her home would involve a peril to her. She assumed that the bus driver did not stop in the proximity of the highway defect, and that he had the same knowledge of the highway condition that she had. Acting on these false assumptions she stepped from the bus into the darkness without taking any precaution. See Fordyce v. White Star Bus Lines, Inc., supra, 304 Pa. [106], at page 112, 155 A. 98; White v. [City of] Harrisburg, 342 Pa. 556, 20 A 2d 751.

"We agree with the court below that the evidence does not justify a finding that defendant was guilty of any negligent act which made it liable for wife plaintiff's injury."

It seems to the court that under the circumstances the plaintiff failed to make out a case against the defendant and that the jury should have been directed to return a verdict in its favor.

Judgment reversed.

Whole Court sitting.