**LOUISVILLE TRANSIT COMPANY,**
Appellant,

v.

**Frances H. JONES, Appellee.**

Court of Appeals of Kentucky.

June 1, 1956.

Bullitt, Dawson & Tarrant, Earl S. Wilson, Louisville, for appellant.

Albert F. Reutlinger, Louisville, for appellee.

MILLIKEN, Chief Justice.

This is an appeal from a judgment for $5,150 awarded Frances H. Jones for a fractured ankle received when alighting from a bus of the Louisville Transit Company at 7:40 a. m. on December 13, 1953, at its regular coach stop on Brownsboro Road near Lightfoot Road in the City of Louisville. The loading platform, a slab of concrete, adjacent to and outside the curb line of the roadway was covered with snow and possibly ice, so the bus driver notified his passengers that he would not pull up to the curb but would let them out in the road because he believed it would prove a safer place for them to alight. As a consequence, he stopped the bus about three feet from the

curb and the passengers alighted on the surface of the road itself with the resulting injury to appellee.

City of Louisville Ordinance, Traffic Code 18–9b(2) provides:

"It shall be unlawful for the operator of any bus or trolley coach to receive or discharge passengers in a coach stop without first having stopped such bus or trolley coach with its two right wheels within twelve inches of and parallel with the curb, provided such coach stop is at least seventy-five (75) feet long and is free of parked vehicles or other obstructions."

The ordinance provides a penalty of from $1 to $25 for its violation.

■ It was the coach stop, not the loading platform, which was required to be free of parked vehicles and other obstructions. In other words, when a bus could be sidled into the curb, it was the duty of the driver ordinarily to do it. The purpose of the ordinance as a part of the city's traffic code was to expedite traffic, to prevent stopped buses from blocking the roadway any more than necessary, and possibly to protect alighting passengers from other vehicular traffic. It might be contended that the ordinance was also intended to assure discharged passengers a safe place to alight and that a loading platform outside the curb line of the roadway was the safest place attainable. We do not believe this latter contention is within the purview of the ordinance, for the driver still could stop his bus to discharge passengers at a regularly established stop even if parked vehicles or other conditions prevented him from sidling his bus into the curb in compliance with the ordinance. He was not required in such circumstances to carry his passengers beyond their destination to the next regular stop where conditions permitted him to comply with the ordinance. When a regular coach stop was blocked for any reason, he, nevertheless, could stop to discharge his passengers if he exercised the highest degree of care and skill in protecting the safety of his passengers as they alighted from the bus. Southeastern Greyhound Lines v. Woods, 298 Ky. 773, 184 S.W.2d 93, 95. It is our conclusion, therefore, that violation of the ordinance was improperly injected into this case because the risk here involved—slipping or falling after alighting from the bus—was not a risk which the ordinance was designed to protect against, and, as a consequence, whether Transit was negligent hinges wholly on whether its driver exercised the highest degree of care for the safety of his passengers in permitting them to alight in the roadway in the circumstances.

■ The driver's entire course of conduct indicates that that is exactly what he thought he was doing. He violated the ordinance in order to diminish the chances, in his judgment, of the very thing happening which did happen. He notified the passengers that he would make the stop away from the curb because the road appeared to be a safer place for them to get off the bus than the sidewalk or loading platform appeared to be, and he admonished them to be careful. They knew the general weather conditions as well as he, and could observe the condition of the specific locale as well as he. The bus was stationary; the passengers were alerted to the possible slipperiness of the roadway; they were warned to be careful. They more or less deliberately exercised their own choice in getting off the bus after the admonition, and, it seems to us, assumed the risk to such an extent that it negatives any liability on the part of Transit. We do not say that the passenger was guilty of contributory negligence. It may be conceded that she used due care, but, nevertheless, she assumed the risk of the consequences. 38 Am.Jur., Negligence, Section 172; Carlisle v. Reeves, Ky., —— S.W.2d ——. If the driver of the bus was guilty of bad judgment (and we do not say he was), the same could as well be said of the passenger (and we do not say she was). Her injury was an accident in the truest sense of the word, and Transit was entitled to a directed verdict absolving it from liability.

Judgment is reversed with directions that a judgment be entered for the appellant.