SOUTHEASTERN GREYHOUND LINES,
DIVISION OF the GREYHOUND
CORPORATION, Appellant,

v.

Marion Russell GRIMES, Appellee.

Court of Appeals of Kentucky.

Dec. 18, 1964.

———◆———

R. W. Keenon, Stoll, Keenon & Park, Lexington, for appellant.

Robert M. Coleman, Coleman, Harlin & Orendorf, Bowling Green, Carroll M. Redford, Carroll M. Redford, Jr., Redford & Redford, Glasgow, for appellee.

WILLIAMS, Judge.

Shortly after alighting from a Greyhound bus the appellee, Marion Russell Grimes, was injured when struck by a truck owned by Kentucky Utilities Company. Separate verdicts were returned by a Barren Circuit Court jury against Greyhound and Ken-

tucky Utilities Company in the amount of $2500 each. Greyhound takes this appeal. Grimes has cross-appealed.

The accident occurred at 5:20 p. m., January 6, 1960. It was dark, there was no precipitation, the road was straight, and the place was within the city limits of Cave City.

The appellee tells this story. He boarded a bus in Louisville bound for Smith's Grove Road, which is south of Cave City. The bus stopped in Cave City at a restaurant for a rest stop. Upon leaving the restaurant he inadvertently boarded a wrong bus, but did not realize it until the bus headed north. He immediately notified the driver, who stopped at a point approximately 150 yards from the restaurant across the road from a motel. Grimes was advised that he could go on to the next town and wait for another southbound bus if he wished. He decided to get off. When the bus driver opened the door the lights came on. Grimes descended the steps to the paved surface of the road, took two steps away from the bus, and remembers nothing after that. He was acquainted with the area and with traffic conditions on that road.

The man who operated the motel adjacent to where the bus stopped testified as follows:

"A. I came out of the restaurant; walked out on the drive and had been standing there just a few minutes and this Greyhound bus going north stopped over across the road and a gentleman got off it and the bus immediately went on north. He stood there on the shoulder just a little while. I don't know exactly how long; probably half a minute; something like that; maybe longer; and then he started across the road and there was a car going north and he walked out in front of this car going north, but the car stopped just real short of striking the man and then at about the same time this KU truck was going south and he walked on out in front of the car that was go-ing north and right into the path of the truck that was going south and the KU truck hit him and I believe knocked him down the road some twenty, twenty-two or twenty-four feet; something like that. * * *"

In answer to further questions, that witness stated that before Grimes started across the road the bus went on over a hill and was out of sight. He stated there was no traffic on the road at that time except the car going north and the Kentucky Utilities truck going south.

The driver of the car heading north which almost struck Grimes said he was driving 20 to 25 miles per hour when he saw something moving. As he got closer he recognized it was a man who had walked in front of him, but he was able to stop at about the point where the accident occurred. At that time Grimes had passed the center of the highway into the southbound traffic lane where he was struck by the Kentucky Utilities truck. The bus was not in sight.

The motel lights had been turned on and the lights of each of the vehicles involved were burning.

Greyhound maintains the case should be reversed and that it is entitled to a judgment notwithstanding the verdict. The appellee has cross-appealed, also asking that the judgment be reversed and that he be granted a new trial.

Greyhound contends that its driver did not discharge Grimes in an unsafe place and was not negligent, or, if so, either Grimes' contributory negligence bars recovery or the intervening negligence of Kentucky Utilities Company supersedes Greyhound's negligence. Grimes maintains that he was discharged at an unsafe place which, coupled with the negligence of Kentucky Utilities Company, caused his injuries.

We have examined this case from every angle, and regardless of which avenue we take the appellee comes out the loser.

He was discharged by the bus driver at his own request inside the city limits of Cave City at a time when there was no undue traffic on the road and under conditions with which he was as familiar as the bus driver. The negligence of Greyhound, if any, would stem from the duty of a carrier to exert the highest degree of care, skill and diligence for the safety of its passengers as is required by the nature and risk of the undertaking. Cincinnati, Newport & Covington Transp. Co. v. Fischer, Ky., 357 S.W.2d 870 (1962). Normally, when a bus stops for the convenience and at the request of a passenger at a place other than its station or platform, the carrier's duty is merely not to discharge the passenger at a place that the carrier knows or ought to know is unsafe. Southeastern Greyhound Lines v. Woods, 298 Ky. 773, 184 S.W.2d 93 (1944). A carrier is not, however, under a duty to advise or warn a passenger of the danger of traffic or to protect him after he has left the bus where the conditions are as apparent to the passenger as to the operator of the bus. Southeastern Greyhound Lines v. Woods, supra.

■■ Grimes was let out at his request and, having safely alighted from the bus, the passenger-carrier relationship terminated. Trout's Adm'r v. Ohio Valley Electric Railway Company, 241 Ky. 144, 43 S.W.2d 507 (1931). But, even if we were to find Greyhound negligent for having transported him to a place other than his original destination or discharged him in an unsafe place, nevertheless the action taken by the appellee from that point on would preclude his recovery. The disinterested eyewitnesses say that the appellee stood safely at the side of the road while the bus proceeded out of sight; that he, apparently without regard for his own safety, walked in front of a northbound automobile which almost struck him, and all the way across the center line into the far lane where he was struck by the southbound Kentucky Utilities truck. It is not contended that he would have been unsafe had he remained on the shoulder of the road where he stood for at least half a minute before walking into the traffic. Greyhound did nothing to persuade or entice him to walk into the traffic at a time when it was unsafe so to do. He walked out of a place of safety into a place of danger. It was not incumbent upon Greyhound to see that he crossed the road with safety. Trout's Adm'r v. Ohio Valley Electric Railway Company, supra. Greyhound is not responsible for the intervening or superseding acts of the appellee or of the Kentucky Utilities Company.

■ The cross-appeal filed by the appellee seeks reversal on the ground the trial court erroneously struck from Instruction No. 1 the words "not negligently transport him from the route over which he had purchased transportation." The answer is that the jury found Greyhound negligent, so, had the desired language been included in the instruction, Greyhound could not have been found any more negligent. In other words, other negligence would have been merely cumulative. Accordingly, the appellee was not prejudiced by the failure to include the requested language. Foley's Adm'r v. Witt, 294 Ky. 498, 172 S.W.2d 81 (1943). As a matter of fact, since Greyhound was entitled to a directed verdict, Grimes was not entitled to any instruction at all.

The judgment is reversed on the appeal, with directions that judgment notwithstanding the verdict be entered in favor of the appellant Southeastern Greyhound Lines, Division of the Greyhound Corporation, and affirmed on the cross-appeal.